[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application to vacate an arbitration award rendered by the State Board of Mediation and Arbitration against the plaintiff Town of Madison. The award to the defendant Union was one compensatory day off with pay at straight time to each member of who worked on February 16, 1996. The Town of Madison claims that the award must be vacated because the award is illegal and violates public policy.
The events which gave rise to the arbitration award are a classic example of the adage that no good deed goes unpunished. February 16, 1996, saw a severe snowstorm in Madison and the rest of Connecticut. Although the Madison Town Hall remained open, First Selectman Thomas Rylander allowed Town Hall employees who did not make it in to work to receive their normal pay. He also allowed those who did make it to work to leave early without docking their pay, provided each department was covered.
Later in the Spring of 1996, the First Selectman gave all of the members of the Department of Public Works and Facilities an additional day off as a token of appreciation for their hard work over the winter "over and above the call of duty." The First Selectman declined to classify either the Town Hall day or the Department of Public Works day as a "holiday."
Upon learning of these days off for other town employees, the defendant Union filed a grievance against the plaintiff Town citing the following provision in Article X, Section 7 of the Union's Collective Bargaining Agreement:
If the First Selectman declares a day of mourning or an
CT Page 318
 additional holiday (not including a day in place of a holiday, such as a Monday for a Sunday holiday), each employee not on leave of absence shall receive a compensatory day off at straight time.
The Union demanded that the Town comply with this provision by giving an additional day off to those police officers who had worked on February 16, 1996. When the Town declined to do so, the matter made its way to the Connecticut State Board of Mediation and Arbitration for resolution.
The State Board of Mediation and Arbitration, after hearing evidence, and after consulting the American Heritage Dictionary, found, regardless of the name given to the day off by the First Selectman, that it was functionally a "holiday" and that the police union was entitled to a day off as well.
The Town now moves to vacate the award. It asserts that the arbitration award creates a "parity" provision in the Collective Bargaining Agreement, and that such a provision is illegal, so that the award must be vacated under Conn. Gen. Stat. §52-418. The Union asserts that the award is not illegal and does not violate public policy and so should stand.
A parity clause in a collective bargaining agreement was first declared to violate public policy in Connecticut by the Connecticut Labor Relations Board (CLRB) in 1973. Municipal unions unhappy with the position of the CLRB litigated the issue, and the Connecticut Supreme Court affirmed the CLRB's pronouncement in the case of Local 1219 International Associationof Fire Fighters v. Connecticut Labor Relations Board,171 Conn. 342 (1976). The court found that the attempt by one municipal union to tie its wages, hours, or working conditions to subsequent collective bargaining agreements of other municipal unions was an interference with the latter union's ability to bargain with the municipality free from interference, restraint, or coercion, an interference prohibited by the Municipal Employee Relations Act, Conn. Gen. Stat. §§ 7-467 through 7-477.
But not all parity clauses in collective bargaining agreements with municipalities are void under the doctrine announced in the Local 1219 case, supra. In upholding the decision of a municipality and the Connecticut Labor Relations Board to regard as void a provision in the fire fighters contract because it placed a burden on the subsequent negotiation of the CT Page 319 police contract, the Supreme Court reiterated that the CLRB "made it clear that it was not deciding that parity . . . was forbidden by the act, or that the existence of a parity clause in and ofitself was unlawful . . ." Id., 350. The Supreme Court merely approved the CLRB's decision to hold void "parity clauses in circumstances similar to those found in the present case," i.e. where a parity clause in the contract of one municipal union burdens the later negotiation of a second union's contract. Id., 351.
Viewing the Local 1219 case in that light, it is far from clear that the contract language at issue here is a parity clause at all, since the clause does not refer to any other set of employees, much less to another municipal union. Rather it refers to the discretion of the First Selectman to declare "an additional holiday" not already contemplated in the collective bargaining agreement, without regard to how any other employees of the town are to be treated with respect to such a holiday. Even if one tortures the language to construe the paragraph as a parity clause, it is certainly not the kind of unlawful parity clause that the Supreme Court held to be void in Local 1219, supra.
Even assuming, arguendo, that Section 7 is an unlawful parity clause, it does not necessarily follow that this court must vacate an arbitration award that is based on that clause. The public policy exception to arbitral authority is a narrow one, and a court's refusal to enforce an arbitrator's interpretation of contract language on this ground is limited to situations where the interpretation would violate "some explicit public policy" that is "well defined and dominant . . ." WatertownPolice Union Local 541, AFSCME, AFL-CIO v. Town of Watertown,210 Conn. 333, 340 (1989).
Not every violation of public policy qualifies as a ground to vacate an arbitration. For example, in Watertown, supra, a police officer alleged that he had been directed by superiors not to enforce certain motor vehicle laws, in contravention of a claimed public policy requiring police officers to enforce all state laws. When he failed to comply with the directive of his superior, he was disciplined. His grievance was the subject of a arbitration before the State Board of Mediation and Arbitration which ruled that, public policy aside, the officer could be disciplined for insubordination. The Supreme Court agreed, holding that the public policy involved was insufficiently CT Page 320 explicit to permit the court to vacate an arbitration under the public policy exception. In Stamford v. Stamford PoliceAssociation, 14 Conn. App. 257 (1988), an award enforcing a contract provision entitling union members to unlimited sick leave was held not to so compromise public safety as to violate a specific public policy.
The cases in which awards of the State Board of Mediation and Arbitration has been vacated as against public policy all involve very apparent and serious misconduct of unions or employees, not matters of semantics as here. An employee who was convicted in federal court of fraudulently negotiating checks in order to obtain $23,852 in union funds to which he was not entitled was allowed to be disciplined by his employer. Board of Education ofthe City of Hartford v. Local 566, Council 4, AFSCME,43 Conn. App. 499, 507 (1996) ("rewarding a convicted felon with reinstatement would undermine the clear public policy against fraud and theft"). In Town of South Windsor v. South Windsor Police Union,41 Conn. App. 649, 677 A.2d 464 (1996), the plaintiff dismissed a police officer who had deliberately disclosed the name of a confidential police informant. The Appellate Court affirmed a trial court decision overturning a decision of the State Board of Mediation and Arbitration which had reinstated the officer after only a suspension. The court treated the intentional disclosure by the officer as serious misconduct and held that the officer's reinstatement violated the explicit public policy, expressed in statutes and case law, of protecting confidential informants.Id., 656-58.
The court finds that Article X, Section 7, as construed by the State Board of Mediation and Arbitration, does not amount to an unlawful parity clause as defined by Connecticut case law. Moreover the disputed public policy here is much more like that discussed in the Watertown and Stamford cases, supra, than in theHartford and South Windsor cases, supra. The court finds that the extension of the additional day off to include members of the defendant union is neither unlawful nor against public policy.
The application to vacate the arbitration award is denied.
Patty Jenkins Pittman, Judge